## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

---

JOHN CANNING,

      *Plaintiff*

    v.

      **CIVIL ACTION NO. _____**
      **JURY TRIAL DEMANDED**

DAKOTA BLACKWELDER,
ASHTON CURTIS,
GABRIEL RAMPEY,
and TERRY LANGLEY

      *Defendants*

---

## <u>COMPLAINT</u>

## <u>PRELIMINARY STATEMENT</u>

This is a civil rights action brought under 42 U.S.C. § 1983 and raising supplemental state law claims against Defendants, individual officers and the Sheriff of the Carroll County Sheriff's (herein "CCS") Office, concerning their unlawful use excessive force against and denial of medical care to plaintiff Mr. John Canning, and failure to supervise subordinates who were responsible for these unlawful actions.

1

Mr. Canning was arrested following a vehicular pursuit. During the arrest, officers brutally and violently beat him and caused symptoms consistent with brain damage, despite Mr. Canning's surrender and lack of resistance. Further, Mr. Canning was denied proper access to medical care following the arrest as a result of Defendants' refusal to provide it to him while in custody, where he remains.

## JURISDICTION & VENUE

1.  This Court has jurisdiction over the subject matter of the complaint under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. Additionally, this Court has supplementary jurisdiction over state law claims under 28 U.S.C. § 1367.

## PARTIES

*Plaintiff*

2.  Plaintiff John Canning was at all times relevant to the complaint a resident of Georgia residing in Carroll County.

*Defendants*

3.  Defendant CCS Officer Dakota Blackwelder is one of three officers who arrested Mr. Canning, and is sued in his individual capacity.

4.  Defendant CCS Officer Gabriel Rampey is one of three officers who arrested Mr. Canning, and is sued in his individual capacity.

2

5.    Defendant CCS Officer Ashton Curtis is one of three officers who arrested Mr. Canning, and is sued in his individual capacity.

6.    All three arresting officer Defendants acted in concert and conspiracy, were jointly and severally liable, and, at all relevant times, acted under color of state law.

7.    Defendant Sheriff Terry Langley is the Sheriff of Carroll County and holds supervisory authority over all other CCS Officers, including arresting officer Defendants. He is sued in his individual capacity.

8.    Defendant Sheriff Terry Langley at all relevant times acted under color of state law.

## FACTUAL ALLEGATIONS

*Apparent Poisoning and Vehicular Pursuit*

9.    On or around September 8, 2020, following an argument and an altercation with his girlfriend at a local party in Columbus, GA, Plaintiff John Canning got into the couple's shared vehicle and began driving to his home to Carrollton, GA.

10.   While driving home, Mr. Canning began to feel sick.

11.   Based on his symptoms, including confusion and paranoia, and his suspicions of some of the individuals at the party, Mr. Canning believes that

he may have been slipped an intoxicating substance without his consent,
such as "GHB," also known as a "roofie".

12. On information and belief, a common symptom of GHB poisoning is
confusion.

13. Unbeknownst to Mr. Canning, law enforcement officials from Columbus
County, GA, came to the party after Mr. Canning had left.

14. Via radio, those officials signaled to CCS Officers that Mr. Canning was in a
stolen car, and to intercept the car upon Mr. Canning's return to Carrollton.

15. As Mr. Canning arrived in Carrollton, CCS Officers began pursuing him by
car.

16. Mr. Canning, confused that he was being pursued despite believing he had
committed no criminal offense, and confused due to the effects of the
apparent GHB poisoning, tried to elude the CCS Officers in fear.

17. CCS Officers pursued Mr. Canning in a high-speed chase.

18. Defendant RAMPEY maneuvered his squad car to force Mr. Canning's
vehicle to spin out of control by bumping into it ("PIT maneuver").

19. As a result, Mr. Canning's car careened off-road, spun out of control, and
stopped.

20.   Mr. Canning emerged from the vehicle, and CCS Officers verbally demanded that he surrender.

*Arrest and Excessive Use of Force*

21.   Hearing CCS Officers' demand that he stop and surrender, Mr. Canning outstretched his arms with his palms facing upwards and laid flat on the ground.

22.   Mr. Canning laid on the ground and put his hands outward before arresting officer Defendants apprehended him.

23.   Though Mr. Canning showed no signs of resistance, he was repeatedly beaten by all three arresting officer Defendants.

24.   Defendant BLACKWELDER or another arresting officer Defendant shoved Mr. Canning's head into the ground and held it there, causing Mr. Canning's mouth to fill with dirt.

25.   While in this position, Defendant BLACKWELDER or another arresting officer Defendant held his knee on Mr. Canning's neck or upper back, preventing Mr. Canning from breathing.

26.   During this time, Defendant BLACKWELDER began carrying out repeated, powerful punches to the back and sides of Mr. Canning's head.

27.   Some of these punches landed on a scar Mr. Canning has from a prior surgery, causing additional excruciating pain.

28.   Defendant CURTIS also repeatedly struck Mr. Canning despite his surrender.

29.   These punches continued for roughly twenty seconds, as Mr. Canning remained physically restrained by all three arresting officer Defendants.

30.   Mr. Canning could not breathe and reasonably believed he was going to die.

31.   Mr. Canning lost consciousness and began seeing flashes of light.

32.   After officers were finished beating and handcuffing Mr. Canning, they picked him up, and Mr. Canning vomited.

33.   All force was used after Mr. Canning had given up and offered no resistance.

34.   On information and belief, vomiting, losing consciousness, and seeing flashes after being deprived of oxygen are signs of brain damage.

35.   Mr. Canning, battered and bruised after this horrific beating, was placed into a CCS squad car without any resistance.

36.   While placing Mr. Canning in the back of a CCS squad car, one of the arresting officer Defendants threatened to break Mr. Canning's legs.

37.   On information and belief, the officer who issued the threat was Defendant BLACKWELDER.

38.   On information and belief, Mr. Canning was still suffering the side effects of GHB poisoning.

39.   Mr. Canning remained shocked, confused, and unstable due to the effects of apparent GHB intoxication and the violent beating.

40.   Mr. Canning continued audibly murmuring in confusion and occasionally screaming incoherently.

41.   Officers disagreed whether or not to take Mr. Canning to a hospital, with Defendant BLACKWELDER insisting that Mr. Canning be taken directly to Jail without an opportunity to be evaluated medically.

42.   Arresting officer Defendants eventually took Mr. Canning to Tanner Medical Center in Carrollton, GA.

43.   Via radio, Defendant BLACKWELDER stated that the Officers were taking Mr. Canning to Tanner Medical Center due to his alleged "jailitis".

44.   While at Tanner Medical Facility, nurses were unable to examine Mr. Canning properly, check if he had suffered any serious brain injuries, or treat his alleged GHB poisoning.

45.   Medical officials were unable to do so because Defendant BLACKWELDER demanded that they hurry up, insisted that Mr. Canning

was fine, and insisted on taking Mr. Canning to the Carroll County Jail as quickly as possible in spite of his visible and audible distress.

46. In doing so, Defendant BLACKWELDER interfered with medical care to hide the extent of Mr. Canning's injuries.

47. As a result, Mr. Canning was treated only for scrapes and bruises, while his more serious injuries and ailments were not evaluated or treated due to the insistence of Defendant BLACKWELDER.

48. Mr. Canning was subsequently taken to Carroll County Jail, where he fell unconscious for an unknown amount of time.

49. After awakening, he was booked at the Jail and mugshot photos of him were taken, plainly showing extreme swelling, welts, and bruises on his head and face.

50. An official at the jail checked Mr. Canning's blood sugar levels after he was booked, and determined that it was at 550.

51. Mr. Canning is diabetic.

52. On information and belief, such a high level of blood sugar is consistent with GHB poisoning.

53. On information and belief, such a high level of blood sugar is potentially fatal in individuals with diabetes and needs to be treated immediately.

54.    After this evaluation, Mr. Canning was finally offered insulin.

55.    Mr. Canning's blood sugar eventually returned to normal levels.

*Long-term Medical Injuries*

56.    While in jail, Mr. Canning has shown symptoms of brain damage, including memory loss, occasional slurred speech, delayed reaction, and difficulty reading properly.

57.    Mr. Canning suffers symptoms of post-traumatic stress disorder (PTSD) resulting from his violent beating, including loss of sleep and emotional distress.

58.    Mr. Canning has requested medical evaluation while at the Carroll County Jail, but has not been seen by a doctor or specialist.

59.    While in jail, Mr. Canning has not been able to access a neurologist or other specialist to determine the extent of any damage or to treat the damage.

*Internal Investigation, Suspension, and Resignation*

60.    According to records obtained from the Carroll County Sheriff's Office pursuant to an Open Records Act request by counsel, on September 16, 2020, Defendant BLACKWELDER was given a letter notice of a three day suspension without pay as a result of a finding that Defendant BLACKWELDER's "use of force was unreasonable". See Exhibit A.

61.    The associated internal investigation concluded that the evidence indicated

       that "in-car video footage of the incident shows Deputy Blackwelder striking

       Canning with closed fist. Whether intentional or unintentional, there appears

       strikes were landed as Canning began to comply. Some strikes were in the

       area of Cannings [sic] head." <u>Id</u>.

62.    The investigation further concluded that Defendant BLACKWELDER

       violated Department policies regarding professionalism where he

       communicated via radio that Mr. Canning was being taken to the hospital for

       "jailitis" rather than the serious medical issues Mr. Canning faced. <u>Id</u>.

63.    On March 8, 2021, Defendant BLACKWELDER was placed on

       administrative leave with pay in response to a complaint regarding his

       unprofessional behavior and excessive use of force. <u>Id</u>.

64.    On the same day, Defendant BLACKWELDER resigned from the CCS

       Office. <u>Id</u>.

*Pattern of Behavior*

65.    In August, 2019, Defendant BLACKWELDER was required attend

       community police training after an incident in which a complaint was filed

       against him. <u>See</u> Exhibit A.

66. During that incident, Defendant BLACKWELDER aggressively demanded that a church group leave a late night revival church service and continued shining his lights at the church until all of the congregants left, despite their being "authorized" to be at the church. Id.

67. This incident indicates Defendant BLACKWELDER's history of exercising his authority beyond the scope of the law.

68. On information and belief, Defendant BLACKWELDER has engaged in other incidents of excessive force that may not have been documented by the CCS Office during the course of arrests and will become known through discovery.

**CLAIMS FOR RELIEF**

**COUNT I**
**Excessive Force, U.S. Const. Amends. IV and XIV and 42. U.S.C. § 1983**

69. Defendants had a federal and constitutional duty barring them from using excessive force upon Mr. Canning.

70. Mr. Canning had clearly surrendered before the use of any force by the arresting officers against his body and offered no resistance afterward.

71. Defendants' use of repeated, powerful blows to Mr. Canning's head, their prevention of his ability to breathe, their pressing of Mr. Canning's head into the ground, and their threats of further violence were objectively

11

unreasonable and unnecessary given the totality of the circumstances and
constituted excessive force.

72.     Where individual arresting officer Defendants did not carry out the
excessive use of force directly, they actively assisted in the excessive use of
force and did not prevent the excessive use of force.

73.     Defendants' excessive use of force caused the damages discussed <u>infra</u>.

## <u>COUNT II</u>
**Deliberate Indifference to a Serious Medical Need, U.S. Const. Amends. IV,
VII and XIV and 42. U.S.C. § 1983**

74.     Defendants had a federal and constitutional duty barring them from treating
Mr. Canning's serious medical needs with deliberate indifference upon
arrest.

75.     Delaying or denying medical care for a serious medical need constitutes
deliberate indifference to that need.

76.     Defendants knew and/or should have known that Mr. Canning had serious
medical needs upon their arrest due to their use of excessive force against
him and due to his erratic behavior upon arrest, and where they took him to
Tanner Medical Center.

77.   Defendants violated their duty by preventing Mr. Canning from being properly examined for the medical ailments and conditions resulting from the events discussed <u>infra</u>.

## COUNT III
### Failure to Supervise, U.S. Const. Amends. IV and XIV and 42 U.S.C. § 1983

78.   Defendant Sheriff Terry Langley has a federal and constitutional duty to ensure, without deliberate indifference, that his subordinates are properly trained and supervised in the use of force and provision of medical care on arrestees including Mr. Canning.

79.   The pattern of behavior from some or all arresting officer Defendants indicates deficient training and/or supervision.

80.   Defendant Langley knew or should have known that some or all arresting officer Defendants were improperly trained, supervised, and/or disciplined for the misuse of force and for the denial of medical care.

81.   Defendant Langley's failure to supervise his subordinates proximately caused the damages discussed <u>infra</u> to Mr. Canning.

## COUNT IV
### Georgia State Law Tort Claims

82.   Any violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered. O.C.G.A. § 51-1-14.

83.    A person commits the offense of simple battery when he or she either intentionally makes physical contact of an insulting or provoking nature with the person of another; or intentionally causes physical harm to another. O.C.G.A. § 16-5-23.

84.    A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another. O.C.G.A. § 16-5-23.1

85.    A person commits the offense of simple assault when he or she attempts to commit a violent injury to the person of another, or commits an act which places another in reasonable apprehension of immediately receiving a violent injury. O.C.G.A. § 16-5-20.

86.    Where a person's wrongful conduct conduct is intentional or reckless; extreme and outrageous; causes emotional distress; and the emotional distress is severe, that person has committed the tort of intentional infliction of emotional distress. See, e.g. Ups v. Moore, 238 Ga. App. 376 (GA App. Ct. 1999).

87.    The conduct of arresting officer Defendants to Mr. Canning was wilful, reckless, and/or intentional.

88.    The officers' wrongful conduct constituted the torts of assault, battery, and

intentional infliction of emotional distress under Georgia state law, and this

Court has supplementary jurisdiction to hear these claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Canning respectfully requests:

1. A trial by jury;

2. Compensatory Damages as to all Defendants;

3. Punitive Damages as to all Defendants;

4. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) & (c)

   and as otherwise permitted by law;

5. Any additional relief that this Court deems just and proper.

Respectfully submitted this 14th Day of April, 2022.

/s/ Amith Gupta
Amith Gupta, Esq.
GA Bar No. 149222
American Trial Law Litigators, LLC
925B Peachtree St. NE, #2151
Atlanta, GA 30309
Tel: (408) 355-5782
amithrgupta+law@gmail.com